```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MINNESOTA
                   Civil No. 10-2111(DSD/FLN)
```

Bonus of America, Inc., a
Texas corporation,

        Plaintiff,

v.     **ORDER**

Angel Falls Services, L.L.C.,
a Minnesota limited liability
company; Gavin Hart, an individual;
Desiree Sanchez, an individual;
Patron Supply, Inc., a Minnesota
corporation; and Ana Diaz, an
individual,

        Defendants.


    Craig P. Miller, Esq., Erin B. Stein, Esq. and Gray,
    Plant, Mooty, Mooty & Bennett, PA, 500 IDS Center, 80
    South Eighth Street, Minneapolis, MN 55402, counsel for
    plaintiff.

    J. Michael Dady, Esq., Kristy L. Zastrow, Esq. and Dady
    & Gardner, PA, Suite 5100, 80 South Eighth Street,
    Minneapolis, MN 55402, counsel for defendants Angel
    Falls Services, Gavin Hart and Desiree Sanchez.


This matter came before the court on May 27, 2010, upon plaintiff Bonus of America, Inc.'s ("Bonus of America") motions for a temporary restraining order ("TRO") and expedited discovery against defendants Angel Falls Services, L.L.C. ("Bonus Building

Care"),[1] Gavin Hart ("Hart"), Desiree Sanchez ("Sanchez"),[2] Patron Supply, Inc. ("Patron") and Ana Diaz ("Diaz"). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants both motions.

**BACKGROUND**

This franchise and trademark dispute arises out of franchise agreements between Bonus of America and Bonus Building Care. Bonus of America is a franchisor of building cleaning and maintenance services and supplies. (See V. Compl. ¶ 2.) On August 20, 2007, Bonus of America and Bonus Building Care entered into two franchise agreements (the "Master Franchisor Agreements") in which Bonus of America granted Bonus Building Care a license to use the Bonus of America marks and system and the right to sell Bonus of America franchises to third parties ("Unit Franchises") in certain Minnesota and Wisconsin counties around Minneapolis, Minnesota (the "Territory"). (See id. ¶¶ 17-18, Exs. 2-3.) On that same day, Hart and Sanchez[3] signed guarantees of their undertakings under the

---

[1] Angel Falls Services, L.L.C. does business as "Bonus Building Care in Minneapolis."

[2] The court refers to Bonus Building Care, Hart and Sanchez collectively as "Franchisees."

[3] At oral argument on May 27, 2010, counsel for Hart and Sanchez stated that Hart is the sole member of Bonus Building Care, that Hart and Sanchez are married, that other than guaranteeing the Master Franchisor Agreements, Sanchez is not involved in Bonus Building Care and that Diaz is Sanchez's sister-in-law.

2

Master Franchisor Agreements ("Guarantees of Undertakings"). (Id. ¶ 19, Exs. 4-5.)

The Master Franchisor Agreements contain a covenant not to compete, which states that during the 25-year agreement, and for two years afterward, Bonus Building Care agrees not to:

> a. Transfer, sell or divert any business or customer of [Bonus Building Care] to any competitor of any Bonus company owned, franchised or Unit Franchisee, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks and other proprietary rights of [Bonus of America].
> b. Employ or seek to employ any person who is at the time, or who within the last twelve (12) months, has been employed by [Bonus of America], another Master Franchisor of [Bonus of America], or any other [Bonus of America] franchisee or Unit Franchisee or otherwise directly or indirectly induce such person to leave his/her employment.
> c. Own, maintain, operate, engage in or have any interest in any business which sells goods or services of a like competitive nature which is located with fifty (50) miles of [Bonus Building Care], any other [Bonus of America] Master franchisee, Unit Franchisee or company owned unit.

(Id. Exs. 2-3 ¶ 3.30.)

In the Guarantees of Undertakings, Hart and Sanchez agreed to abide by the covenants not to compete contained in the Master Franchisor Agreements. (See id. Exs. 4-5.)

Diaz incorporated Patron in January 2009. (See id. Ex. 26.) According to Bonus of America, Patron provides competing cleaning and maintenance services and supplies within the Territory. (Id. ¶¶ 44-45.) Patron has submitted janitorial proposals to businesses within the Territory and has solicited or is currently serving

3

Bonus Building Care customers. (See id. Exs. 10-21.)

Bonus of America also alleges that Hart and Bonus Building Care play a role in the day-to-day business of Patron. (See id. ¶¶ 57-59.) In support, Bonus of America submitted Patron janitorial proposals that list Hart as the contact person and use Bonus Building Care and Hart's certificate of liability insurance. (See id. Exs. 11, 13-15.) Bonus of America also submitted recent invoices from nonparty Ecolab to Patron that use Hart's name. (Id. Ex. 23.) Moreover, Bonus of America alleges that Patron is using the marks and trade name of Bonus of America. (Id. ¶ 62.) For example, Patron has used Hart and Bonus of America's email addresses to conduct business, and has used images and other features from Bonus of America materials in its own proposals. (See id. ¶¶ 62-64; compare id. Ex. 15, with id. Ex. 32.)

On May 21, 2010, Bonus of America filed a verified complaint and moved for a TRO and expedited discovery against Franchisees, Diaz and Patron. On May 27, 2010, the court heard argument from counsel for Bonus of America and Franchisees. Diaz and Patron did not appear. The court now considers Bonus of America's motions.

## DISCUSSION

### I. Motion for a TRO

A TRO is an extraordinary equitable remedy, and the movant bears the burden of establishing its propriety. See Watkins Inc.

4

v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a TRO should issue: (1) the threat of irreparable harm to the movant in the absence of relief, (2) the balance between that harm and the harm that the relief may cause the non-moving party, (3) the likelihood of the movant's ultimate success on the merits and (4) the public interest. See Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

### A. Irreparable Harm

Bonus of America argues that defendants' operation of a competing business and use of Bonus of America's marks and system damages its goodwill. To show irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). "[P]otential loss of goodwill qualifies as irreparable harm." Id. at 426. Based on defendants' competing business and use of Bonus of America's marks and system, the court finds that Bonus of America has demonstrated that it is likely to suffer irreparable harm to its goodwill without equitable relief. Therefore, this factor weighs in favor of Bonus of America.

### B. Balance of Harms

The court has already determined that Bonus of America's reputation and goodwill are harmed by defendants' operation of a

competing business within the Territory. Balanced against that harm is harm to defendants' ability to operate Patron. Such harm is lessened, however, because Bonus Building Care may continue to operate. Franchisees' self-infliction of harm by violating their agreements further lessens the weight assigned to the harm. See Anytime Fitness, Inc. v. Reserve Holdings, LLC, No. 08-4095, 2008 WL 5191853, at *7 (D. Minn. Oct. 8, 2008). Therefore, this factor weighs in favor of Bonus of America.

**C. Likelihood of Success on the Merits**

The court next considers the "most significant" Dataphase factor: likelihood that the movant will prevail on the merits. S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). The agreements specify application of Texas law. See Milliken & Co. v. Eagle Packaging Co., 295 N.W.2d 377, 380 n.1 (Minn. 1980) ("[P]arties may agree that the law of another state shall govern their agreement ...."). Under Texas law, covenants not to compete are enforceable if they are:

> ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com. Code Ann. § 15.50. A contract is "otherwise enforceable" when promises outside of the covenant constitute an enforceable agreement. See Ray Mart Inc. v. Stock Bldg. Supply of

6

Tex. LP, 302 F. App'x 232, 236–37 (5th Cir. 2008) (applying Texas law). A covenant is ancillary if (1) the consideration given in the otherwise-enforceable agreement creates the franchisor's interest in restraining the actions of its franchisees, and (2) the covenant is designed to enforce the franchisee's promises. See id. at 237.

In this case, the agreements are otherwise enforceable because Bonus of America promised to allow use of Bonus of America's marks and system and to disclose confidential information in exchange for Franchisees' promises to make payments, to keep the information confidential and to refrain from competition within the Territory. This consideration gives rise to Bonus of America's interest in restraining Franchisees from competing with it, and the covenant not to compete is designed to enforce Franchisees' promises. Furthermore, the Master Franchisor Agreements restrain competition only for their duration plus two years, and limit the restrained territory to a 50-mile radius. The court finds these restrictions reasonable and not greater than necessary to protect the interests of Bonus of America. Therefore, the covenant is enforceable.[4]

Bonus of America's verified complaint includes facts suggesting that defendants are using Bonus of America marks and operating Patron in violation of the covenants not to compete.

---

[4] Hart's self-serving affidavit delivered at oral argument does not, at this point in the litigation, void the Master Franchisor Agreements.

Further, Bonus of America has submitted evidence of defendants' use of its mark in an email address used to conduct Patron's business. Therefore, the court finds that Bonus of America is likely to succeed on the merits of its claims, and this factor weighs in favor of Bonus of America.

**D. Public Interest**

The public interest does not strongly favor one party over the other. There is a public interest in upholding contractual agreements. There also is a public interest, however, in unrestrained competition. Therefore, the public interest factor slightly favors Bonus of America. Accordingly, based upon a balancing of the four Dataphase factors, a TRO is warranted.

**II. Application of TRO to Diaz and Patron**

A TRO also binds persons who receive actual notice of the order through personal service or otherwise and who are "in active concert or participation with" the parties and their "officers, agents, servants, employees, and attorneys." Fed. R. Civ. P. 65(d)(2). Rule 65(d)(2) prevents enjoined parties from "nullify[ing] a decree by carrying out prohibited acts through aiders and abettors." Thompson v. Freeman, 648 F.2d 1144, 1147 (8th Cir. 1981) (citation omitted). Here, Diaz and Patron are named parties who have been served process (Doc. No. 15-1) but are not signatories to the Master Franchisor Agreements. Diaz incorporated Patron, and evidence suggests that Hart and Bonus

8

Building Care participate in Patron. See <u>Crane Boom Life Guard Co. v. Saf-T-Boom Corp.</u>, 362 F.2d 317, 322 (8th Cir. 1966). Therefore, based on the present record, the court finds that Diaz and Patron are in active concert and participation with Franchisees, and may properly be bound by a TRO.

**III. Expedited Discovery**

Bonus of America also seeks expedited discovery to prepare for a motion for a preliminary injunction. The court finds that expedited discovery is warranted in this case and therefore, grants Bonus of America's motion. See Fed. R. Civ. P. 26(d).

**CONCLUSION**

Based on the above, **IT IS HEREBY ORDERED** that:

1. Bonus of America's motion for a temporary restraining order [Doc. No. 2] is granted.

2. Defendants, their agents, servants, employees, attorneys and those persons acting in concert or participation with them, are immediately enjoined from:

> a. Transferring, selling or diverting - or attempting to transfer, sell or divert - any business or customer of Bonus Building Care to any competitor of Bonus of America, Bonus Building Care, Master Franchisor of Bonus, Bonus franchisee or Bonus Unit Franchise Owner, by direct or indirect inducement

9

or otherwise, or doing or performing, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Bonus Marks and other proprietary rights of Bonus of America and the Bonus System;

b.  Except as allowed by the Master Franchisor Agreements, employing or seeking to employ any person who is at the time, or who within the last twelve months, has been employed by Bonus of America, Bonus Building Care, Master Franchisor of Bonus, Bonus franchisee or Bonus Unit Franchise Owner, or otherwise directly or indirectly inducing such person to leave his/her employment; and

c.  Owning, maintaining, operating, engaging in or having any interest in any business that is located within fifty miles of Bonus Building Care and which sells, or offers for sale, supplies, equipment, cleaning services and/or maintenance building services that are similar to those sold or offered by Bonus of America, Bonus Building Care, Master Franchisor of Bonus, Bonus franchisee or Bonus Unit Franchise Owner.

3. Defendants shall cease using any Bonus tradename, trademarks or related commercial symbols owned by Bonus of America

as part of, or in association with, the operation of Patron. This includes, but is not limited to, ceasing use of the Bonus email addresses.

    4.    Defendants shall cease using or divulging any Bonus of America proprietary or confidential information and cease using any of Bonus of America's copyrighted materials or marketing materials in any other business pursuit.

    5.    Franchisees shall continue to conduct the business operations of Bonus Building Care in good faith and shall use good-faith efforts to support all Bonus Building Care Unit Franchisees and service all Bonus Building Care customers properly and efficiently.

    6.    This order shall remain in effect for fourteen days.

    7.    Bonus of America shall provide security to defendants in the form of a bond or deposit of cash with the Clerk of Court in the amount of $5,000.

    8.    Bonus of America's motion for expedited discovery [Doc. No. 5] is granted.

Dated: May 28, 2010

                                              s/David S. Doty  
                                              David S. Doty, Judge  
                                              United States District Court