```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF MINNESOTA
                    Civil No. 10-2111(DSD/FLN)
```

Bonus of America, Inc., a
Texas corporation,

        Plaintiff,

v.                                                              **ORDER**

Angel Falls Services, L.L.C.,
a Minnesota limited liability
company; Gavin Hart, an individual;
Desiree Sanchez, an individual;
Patron Supply, Inc., a Minnesota
corporation; and Ana Diaz, an
individual,

        Defendants.

    Craig P. Miller, Esq., Erin B. Stein, Esq. and Gray,
    Plant, Mooty, Mooty & Bennett, PA, 500 IDS Center, 80
    South Eighth Street, Minneapolis, MN 55402, counsel for
    plaintiff.

    J. Michael Dady, Esq., Kristy L. Zastrow, Esq. and Dady
    & Gardner, PA, Suite 5100, 80 South Eighth Street,
    Minneapolis, MN 55402, counsel for defendants Angel Falls
    Services, L.L.C., Gavin Hart and Desiree Sanchez; Lisa
    Lodin Peralta, Esq., Nelson L. Peralta, Esq. and Peralta
    & Peralta, Ltd., 3009 Holmes Avenue South, Minneapolis,
    MN 55408, counsel for defendants Patron Supply, Inc. and
    Ana Diaz.

    This matter came before the court on June 14, 2010, upon the motion of plaintiff Bonus of America, Inc. ("Bonus of America") for a preliminary injunction against defendants Angel Falls Services, L.L.C. ("Bonus in Minneapolis"),[1] Gavin Hart ("Hart"), Desiree

---

[1] Angel Falls Services, L.L.C. does business as "Bonus Building Care in Minneapolis." The court previously referred to the entity as "Bonus Building Care" but now uses the more specific
                            (continued...)

Sanchez ("Sanchez"), Patron Supply, Inc. ("Patron") and Ana Diaz ("Diaz").[2] Based on a review of the file, record and proceedings herein, and for the following reasons, the court grant the motion.

## BACKGROUND

This dispute arises out of franchise agreements between Bonus of America and Bonus in Minneapolis. Bonus of America is a franchisor of building cleaning and maintenance services and supplies. (See V. Compl. ¶ 2.) On June 4, 2007, Hart entered into an expedited master franchise agreement with Bonus of America so that he could attend its national convention. (Hart Aff. [Doc. No. 40] ¶¶ 13-14.) The parties understood that the agreement would be modified following negotiation. (Id. ¶ 14.) According to Hart, Bonus of America president Perry White, ("White") shared revenue information from other Bonus of America franchisees prior to the execution of the agreement. (See id. ¶¶ 3-10.) On August 20, 2007, Bonus of America, Hart and Bonus in Minneapolis entered into two franchise agreements (the "Master Franchisor Agreements") in which Bonus of America granted Bonus in Minneapolis a license to use the Bonus of America marks and system and the right to sell

---

[1](...continued)
name "Bonus in Minneapolis" to avoid confusion with the registered trademark.

[2] Defendant's full name is Ana Isabel Diaz Ochoa, but the court uses the version that appears in the case caption.

Bonus of America franchises to third parties ("Unit Franchises") in certain Minnesota and Wisconsin counties around Minneapolis, Minnesota (the "Territory"). (See V. Compl. ¶¶ 17–18, Exs. 2–3.) The Master Franchisor Agreements "supercede[d] the [f]irst [m]aster [f]ranchise agreement that [Hart] signed on June 4, 2007." (Hart Aff. [Doc. No. 40] ¶ 16.) Also on August 20, 2007, Hart and Sanchez[3] signed guarantees of their undertakings under the Master Franchisor Agreements ("Guarantees of Undertakings"). (V. Compl. ¶ 19, Exs. 4–5.) Thereafter, Bonus of America provided training and support to Hart. (See Hart Aff. [Doc. No. 64] Ex. A.)

The Master Franchisor Agreements contain covenants not to compete, which state that during the 25-year agreement, and for two years afterward, Bonus in Minneapolis agrees not to:

> a. Transfer, sell or divert any business or customer of [Bonus in Minneapolis] to any competitor of any Bonus company owned, franchised or Unit Franchisee, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks and other proprietary rights of [Bonus of America].
> b. Employ or seek to employ any person who is at the time, or who within the last twelve (12) months, has been employed by [Bonus of America], another Master Franchisor of [Bonus of America], or any other [Bonus of America] franchisee or Unit Franchisee or otherwise directly or indirectly induce such person to leave his/her employment.
> c. Own, maintain, operate, engage in or have any interest in any business which sells goods or services of

---

[3] At oral argument on May 27, 2010, counsel for Hart and Sanchez stated that Hart is the sole member of Bonus in Minneapolis and that, other than guaranteeing the Master Franchisor Agreements, Sanchez is not involved in Bonus in Minneapolis.

3

> a like competitive nature which is located with fifty
> (50) miles of [Bonus in Minneapolis], any other [Bonus of
> America] Master franchisee, Unit Franchisee or company
> owned unit.

(V. Compl. Exs. 2-3 ¶ 3.30.) In the Guarantees of Undertakings, Hart and Sanchez agreed to abide by the covenants not to compete contained in the Master Franchisor Agreements. (See id. Exs. 4-5.)

Diaz incorporated Patron in January 2009. (See id. Ex. 26.) Patron provides cleaning and maintenance services and supplies within the Territory. (Defs.' Mem. Opp'n [Doc. No. 70] 2.) Patron has submitted janitorial proposals to businesses within the Territory and has solicited and served Bonus in Minneapolis customers. (See id. Exs. 10-21.) Patron uses many of the same employees and independent contractors as Bonus in Minneapolis. Following the May 28, 2010, temporary restraining order issued by this court, Patron terminated its contracts with former Bonus in Minneapolis clients. (Diaz Aff. [Doc. No. 71] ¶ 4.)

Bonus of America alleges that Hart and Bonus in Minneapolis play a role in the day-to-day business of Patron. (See Shannon Aff. ¶¶ 4, 6-9; Jones Aff. ¶¶ 3, 7-9; Smith Aff. 7-8, 11-12.) In support, Bonus of America submits Patron janitorial proposals that list Hart as its contact person and use Bonus in Minneapolis and Hart's certificate of liability insurance. (See V. Compl. Exs. 11, 13-15.) One accepted Patron proposal contains both Diaz and Hart's initials. (See id. Ex. 24.) Bonus of America also submits recent invoices from nonparty Ecolab to Patron that use Hart's name. (Id.

4

Ex. 23.) Lastly, Bonus of America alleges that Patron is using intellectual property of Bonus of America. (See id. ¶ 62.) For example, Patron has used images and other features from Bonus of America materials in its own proposals. (Compare id. Ex. 15, with id. Ex. 32.) Hart, Diaz and Patron dispute that Patron is unfairly competing with Bonus of Minneapolis and that Hart runs Patron. (See Hart Aff. [Doc. No. 64] ¶ 6; Her Aff. [Doc. No. 72] ¶¶ 11-12; Diaz Aff. [Doc. No. 71] ¶¶ 8-9.)

Bonus of America brought this action on May 21, 2010. On May 27, 2010, the court heard argument from counsel for Bonus of America and Hart, Sanchez and Bonus in Minneapolis. Diaz and Patron did not appear. The court issued a temporary restraining order on May 28, 2010. On June 8, 2010, Diaz and Patron retained counsel. On June 14, 2010, the court heard argument from all counsel on the instant motion for a preliminary injunction. At that hearing, the court granted Diaz and Patron's motion for additional time to conduct expedited discovery and submit supplemental briefs. All parties timely submitted supplemental briefs, and the court now considers Bonus of America's motion.

## DISCUSSION

### I. Motion for a Preliminary Injunction

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. Watkins

5

Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a preliminary injunction should issue: (1) the threat of irreparable harm to the movant in the absence of relief, (2) the balance between that harm and the harm that the relief may cause the non-moving party, (3) the likelihood of the movant's ultimate success on the merits and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

### A. Irreparable Harm

Bonus of America argues that defendants' operation of a competing business and use of Bonus of America's marks and system damages its goodwill. Patron and Diaz respond that because there is no connection between Hart and Bonus in Minneapolis and Diaz and Patron, and because Bonus of America has alleged that only its "Bonus Building Care" is a registered mark, there is no threat of harm.[4] To show irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). "[P]otential loss of goodwill qualifies as irreparable harm." Id. at 426. Here, the record contains substantial evidence that, contrary to the affidavits of Hart and Diaz, Hart has been involved with Patron. The record

---

[4] As noted below, the court does not address the registered trademark claims in this order.

suggests that defendants' competing business and use of Bonus of America's system is likely to cause irreparable harm to Bonus of America's goodwill without equitable relief.  Therefore, this factor weighs in favor of Bonus of America.

    **B.    Balance of Harms**

The court has already determined that Bonus of America's reputation and goodwill are harmed by defendants' operation of a competing business within the Territory.  Balanced against that harm is harm to defendants' ability to operate Patron.  Although Patron is owned by Diaz, the record suggests that Hart played an active role beyond speaking "about [Bonus in Minneapolis and Patron's] respective businesses in general terms."  (Def.'s Mem. Opp'n [Doc. No. 70] 5.)  Hart may not avoid his convenant not to compete by doing through Diaz and Patron what he has agreed not to do himself.  Moreover, the self-infliction of harm by violating the Master Franchisor Agreements further lessens the weight assigned to the harm.  Therefore, this factor weighs in favor of Bonus of America.

    **C.    Likelihood of Success on the Merits**

The court next considers the "most significant" Dataphase factor: likelihood that the movant will prevail on the merits. S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).  At this stage in the proceeding, the court does not decide whether the movant will ultimately win, nor must the movant prove

7

a greater than fifty-percent likelihood of success. See Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 371 (8th Cir. 1991); Dataphase, 640 F.2d at 113.

**1.   Enforceability of the Master Franchisor Agreements**

Hart, Sanchez and Bonus in Minneapolis first argue that the Master Franchisor Agreements are unenforceable because Bonus of America sold the franchise before it was registered to do so in Minnesota.[5] The Minnesota Franchise Act ("MFA") prohibits a person from offering or selling a franchise "unless there is an effective registration statement on file" with the state. Minn. Stat. § 80C.02. A franchisee may sue a franchisor who violates the MFA for damages or rescission within three years after the cause of action accrues. Id. § 80C.17 subdivs. 1, 5. Equitable defenses are available, however, in an action for rescission under the MFA. Clapp v. Peterson, 327 N.W.2d 585, 586 (Minn. 1982). To avoid unjust outcomes based on technical violations, absent actual fraud, franchisees do not have an absolute right to rescind a franchise agreement which violates the MFA. Id. at 587. Bonus of America submitted its franchise registration on April 19, 2007, and the state of Minnesota approved the registration on July 26, 2007. Hart, Sanchez and Bonus in Minneapolis argue that the June 4, 2007,

---

[5] On June 3, 2010, Hart, Sanchez and Bonus in Minneapolis counterclaimed and filed a third-party complaint against White seeking rescission of the Master Franchisor Agreements, Guarantees of Undertakings and promissory notes. (See Doc. No. 32.)

8

franchise agreement is voidable because Bonus of America had not received its registration approval. Bonus of America responds that the August 20, 2007, Master Franchisor Agreements superseded the expedited agreement, and that Hart, Sanchez and Bonus in Minneapolis have ratified the Master Franchisor Agreements. Bonus of America further argues that Hart's unclean hands bars rescission. The court finds this registration violation to be the type of "technical violation" that concerned the Clapp court. Therefore, the court determines that Bonus of America's equitable defenses are available and applicable.

Hart, Sanchez and Bonus in Minneapolis next argue that Bonus of America violated the MFA by providing revenue information and projections prior to the sale of the franchise. The MFA prohibits the offer or sale of a franchise "by means of any written or oral communication which includes an untrue statement of a material fact or which omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Minn. Stat. § 80C.13 subdiv. 2. As part of its registration, the franchisor must include a public offering statement which includes a copy of estimated or projected franchisee earnings prepared for presentation to prospective franchisees. See id. § 80C.04 subdiv. 1(p); Minn. R. 2860.3500 subpt. 14. A franchisor may not make statements contrary to a disclosure in the public offering statement. Minn. R.

9

2860.4500(B)(1). Hart, Sanchez and Bonus in Minneapolis assert that White shared the revenue information of two other Bonus of America franchisees, a newsletter containing gross monthly revenues of all franchisees, year-one financial information from three franchisees and provided a password for the Bonus of America intranet. (See Hart Aff. [Doc. No. 40] ¶¶ 4-6, 8-10.) Bonus of America denies that it provided this financial information to Hart. (See White Aff. [Doc. No. 52] ¶¶ 2-3, 5-9.) Faced with conflicting self-interested statements, the court cannot determine the parties' likelihood of success as to rescission based on financial disclosures. Even if Hart, Sanchez and Bonus in Minneapolis prevail on the fact issues, however, Bonus of America may assert equitable defenses. Therefore, the court determines that Hart, Sanchez and Bonus in Minneapolis have not shown, at this stage in the litigation, that the Master Franchisor Agreements and Guarantees of Undertakings are unenforceable.

## 2. Enforceability of the Covenants Not to Compete

The agreements specify application of Texas law.[6] See

---

[6] Hart, Sanchez and Bonus in Minneapolis argue that § 80C.21 of the MFA voids the choice-of-law provision. The outcome is the same, however, if the court applies Minnesota law. Minnesota courts uphold covenants not to compete that are "for the protection of the legitimate interest of the party in whose favor [they are] imposed, reasonable as between the parties, and not injurious to the public." See Bennett v. Storz Broad. Co., 134 N.W.2d 892, 898 (Minn. 1965) (employment contract); Adcom Express, Inc. v. EPK, Inc., No. C6-95-2128, 1996 WL 266412, at *4 (Minn. Ct. App. May 21, 1996) (franchise agreement).

Milliken & Co. v. Eagle Packaging Co., 295 N.W.2d 377, 380 n.1 (Minn. 1980) ("[P]arties may agree that the law of another state shall govern their agreement ...."). Under Texas law, covenants not to compete are enforceable if they are:

> ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com. Code Ann. § 15.50. A contract is "otherwise enforceable" when promises outside of the covenant constitute an enforceable agreement. See Ray Mart Inc. v. Stock Bldg. Supply of Tex. LP, 302 F. App'x 232, 236–37 (5th Cir. 2008) (applying Texas law). A covenant is ancillary if (1) the consideration given in the otherwise-enforceable agreement creates the franchisor's interest in restraining the actions of its franchisees, and (2) the covenant is designed to enforce the franchisee's promises. See id. at 237.

In this case, the agreements are otherwise enforceable because Bonus of America promised to allow use of Bonus of America's system and to disclose confidential information in exchange for Hart, Sanchez and Bonus in Minneapolis's promises to make payments, to keep the information confidential and to refrain from competition within the Territory. This consideration gives rise to Bonus of America's interest in restraining Hart, Sanchez and Bonus in

Minneapolis from competing with it, and the covenant not to compete is designed to enforce their promises. Furthermore, the Master Franchisor Agreements restrain competition only for their duration plus two years, and limit the restrained territory to a 50-mile radius. The court finds these restrictions reasonable and not greater than necessary to protect the interests of Bonus of America. Therefore, the covenant is enforceable.

Bonus of America's verified complaint and affidavits by former employees and independent contractors include numerous facts suggesting that defendants are operating Patron in violation of the covenants not to compete. Further, Bonus of America has submitted evidence of defendants' use of its name in an email address used to conduct Patron's business. Therefore, the court finds that Bonus of America is likely to succeed on the merits of its contract claims, and this factor weighs in favor of Bonus of America.[7]

**D. Public Interest**

The public interest does not strongly favor one party over the other. There is a public interest in upholding contractual agreements. There also is, however, a public interest in unrestrained competition. Therefore, the public interest factor

---

[7] Because the court finds Bonus of America likely to succeed on its claim based on the covenants not to compete, the court does not address the registered trademark issues.

slightly favors Bonus of America. Accordingly, based upon a balancing of the four Dataphase factors, a preliminary injunction is warranted.

**II. Application of a Preliminary Injunction to Diaz and Patron**

A preliminary injunction also binds persons who receive actual notice of the order through personal service or otherwise and who are "in active concert or participation with" the parties and their "officers, agents, servants, employees, and attorneys." Fed. R. Civ. P. 65(d)(2). Rule 65(d)(2) prevents enjoined parties from "nullify[ing] a decree by carrying out prohibited acts through aiders and abettors." Thompson v. Freeman, 648 F.2d 1144, 1147 (8th Cir. 1981) (citation omitted). Here, Diaz and Patron are not signatories to the Master Franchisor Agreements.

Although Diaz is the incorporator and sole owner of Patron, the record suggests that Hart and Bonus in Minneapolis participate in Patron. See Crane Boom Life Guard Co. v. Saf-T-Boom Corp., 362 F.2d 317, 322 (8th Cir. 1966). All of the parties submitted self-serving affidavits supporting their positions. The nonparty affidavits, however, support Bonus of America's assertion that Hart is actively involved in Patron. (See Shannon Aff. ¶¶ 6–9 ("Mr. Hart was the person who ran the day-to-day operations and management of both businesses. I did accounting services for both Patron Supply and Bonus of Mpls [sic] at the direction of Mr. Hart and no one else."); Jones Aff. ¶¶ 3, 7–9 ("Mr. Hart kept all of the

13

Bonus of Mpls [sic] and Patron files and documents together in the same location."); Smith Aff. 7-8, 11-12 ("Patron has always been Mr. Hart's business, and he operated and managed the business to the same degree (if not more) as his Bonus of Mpls [sic] business.").) Nonparty affidavits submitted by defendants do not refute Bonus of America's assertion. (See Her Aff. ¶ 11 (stating only that Hart does not own or run Patron); Berg Aff. ¶ 7 (stating that he dealt with Diaz); Henderson Aff. ¶ 9 (stating that Hart instructed him not to use Bonus of America materials or Hart's name on Patron's proposals).) Second, numerous Patron documents bear Hart's name, initials or his certificate of insurance. Therefore, based on the present record, the court finds that Diaz and Patron are in active concert and participation with Hart and Bonus in Minneapolis, and may properly be bound by the preliminary injunction.

## CONCLUSION

Based on the above, **IT IS HEREBY ORDERED** that:

1. Bonus of America's motion for preliminary injunction [Doc. No. 27] is granted.

2. Defendants, their agents, servants, employees, attorneys and those persons acting in concert or participation with them, are immediately enjoined from:

14

a. Transferring, selling or diverting - or attempting to transfer, sell or divert - any business or customer of Bonus in Minneapolis to any competitor of Bonus of America, Bonus in Minneapolis, Master Franchisor of Bonus, Bonus franchisee or Bonus Unit Franchise Owner, by direct or indirect inducement or otherwise, or doing or performing, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Bonus Marks and other proprietary rights of Bonus of America and the Bonus System;

b. Except as allowed by the Master Franchisor Agreements, employing or seeking to employ any person who is at the time, or who within the last twelve months, has been employed by Bonus of America, Bonus in Minneapolis, Master Franchisor of Bonus, Bonus franchisee or Bonus Unit Franchise Owner, or otherwise directly or indirectly inducing such person to leave his/her employment; and

c. Engaging in any business in violation of the terms of the covenants not to compete contained in the Master Franchisor Agreements;

3. Defendants not use any Bonus tradename, trademarks or related commercial symbols owned by Bonus of America as part of, or in association with, the operation of Patron. This includes, but is not limited to, ceasing use of the Bonus email addresses.

4. Defendants shall not use or divulging any Bonus of America proprietary or confidential information and cease using any of Bonus of America's copyrighted materials or marketing materials in any other business pursuit.

5. Hart, Sanchez and Bonus in Minneapolis shall continue to conduct the business operations of Bonus in Minneapolis in good faith and shall use good-faith efforts to support all Bonus in Minneapolis Unit Franchisees and service all Bonus in Minneapolis customers properly and efficiently.

7. Bonus of America shall provide security to defendants in the form of a bond or deposit of cash with the Clerk of Court in the amount of $50,000;

8. The court denies Bonus of America's motion for attorneys' fees as premature.

9. The parties shall contact Magistrate Judge Franklin L. Noel to schedule a mediation conference at the earliest possible date.

Dated: July 6, 2010

                                              s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court